ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JOSEPH TARTAKOVSKY (CABN 282223)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7320
    FAX: (415) 436-7234
    Joseph.tartakovsky@usdoj.gov

Attorneys for United States of America

FILED
Dec 17 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>QUINYUN CHEN,<br><br>    Defendant. | CASE NO. 24-mj-71766 MAG<br><br>**GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF MOTION FOR PRETRIAL DETENTION** |

On December 16, 2024, defendant Quinyun Chen was charged by criminal complaint with a violation of 18 U.S.C. § 1349—Conspiracy to Commit Wire Fraud. Doc. 1. She is in the custody of the Marin County Sheriff's Office and will be brought into federal custody on a writ of habeas corpus. The government moves to detain Ms. Chen as a flight risk. In the alternative, the government requests, at a minimum, that the Court request a Prebail Report before ordering the defendant's release.

## I.    LEGAL STANDARDS

This Court may detain a defendant pretrial where "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e)(1), (b). A finding that a defendant presents a risk of non-appearance must be supported by a preponderance of the

evidence.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

## II.  ARGUMENT

The government has evidence to prove that Chen is a trusted member of an international fraud network that targets elderly Americans in sophisticated campaigns to steal their life savings.  The prosecution can prove at trial that Chen personally took, from victims' own hands, money extorted from them through various deceptive and coercive techniques.  (In this single-count complaint, only one victim is mentioned; the government may charge counts with other victims.)  The government's concern today, by this motion, is that Chen bears the markings of a person likely to disappear if released.

Evidence by a preponderance supports this conclusion.

*First,* investigators searched her home, in a residential area of San Leandro, on November 13, 2024, just over a month ago.  What deputies found was bizarre—but also consistent with an organized fraud ring.  Five others, according to deputies, were residing there.  Every one of them claimed to have moved to the home within the last six months.  But none claimed to know Chen well and all said they rarely interacted with her.  They said that Chen was already living there when they arrived.

Chen was interviewed.  She made statements about her background that do not add up.  For instance, she spoke of a "friend" and ex-roommate whose full name she could not remember.  She claimed that her sole job was to work at a karaoke bar one or two nights a week and earn between $200-$500 a night.  She also said her monthly rent was $2,000.  It is unclear how she paid her rent (or afforded the BMW X5 registered in her name) on as little as $800 a week.  She also made what the government believes were plainly lies about her participation in charged criminal conduct.

The contents of the house were, to say the least, suspicious.  In one room (not Chen's), deputies found some 30 SIM cards, each with a different phone number written on the top, possibly to allow for easy changes or porting of numbers.  Elsewhere they stumbled on some 75 identification cards belonging to people other than those in the house: IDs or driver licenses belonging to people in New York, Missouri, North Carolina; high school ID cards, and NYC taxi licenses; dozens of credit cards (in others' names); and gift cards for supermarkets, restaurants, and casinos in various parts of the country.

In one housemate's bedroom, authorities found $14,890 in cash in a nightstand, held together

with rubber bands. Another $1,470 was loose. There was a collection of drugs: pills in the form of blue triangles, blue squares, brown skulls, or yellow circles; baggies and vials with white powders; a gallon-sized bag with white crystalline substance; and a "kimchi" container with yet another white powder.

In Chen's own bedroom, deputies found ketamine and $5,000 in cash, all in $100 bills. (They also found evidence of offenses similar to the charged one, such as a receipt from a bank for a $19,000 withdrawal and empty money pouches from various banks.

*Second,* Chen has ties to international co-conspirators. The then-79-year-old victim told investigators that the fraudsters that called her had Indian accents. Chen is a native Mandarin speaker. Evidence from her phone shows that she had to translate messages from English to Chinese, or Chinese to English, in order to work with her co-conspirators. She also communicated in Chinese via encrypted chats.

*Third,* Chen's phone is subscribed to another person in another state. Investigators don't yet know with certainty who this person is, but this person shares Chen's last name and was arrested in New York for committing a gift-card scam and identified as hailing from an East Bay location some 25 minutes from Chen.

*Fourth,* the government was told by Immigration and Customs Enforcement that Chen is a Chinese citizen with lawful permanent residence status here since 2021. She has a Chinese passport. She traveled to China in November 2022 and in February 2023. Evidently she maintains ties to that country.

*Fifth,* Chen is alleged in the complaint to have had $50,500 in her possession; the government has evidence that she possessed, at various points, much more. Where is all that cash? Either she has it hidden somewhere or she transferred it, likely abroad, where she also may have access to it. This fact gives her incentives to flee and little incentive to stay and face the charges against her.

### III.     CONCLUSION

Chen is a serious risk of flight. A preponderance of evidence supports that conclusion. The government and Court know little about her ties to the community beyond her questionable living arrangements and dubious employment. She resides in a home that for some reason—but almost certainly not a good one—is strewn with others' IDs and credit cards and dozens of SIM cards and piles of cash and drugs—all unusual items to encounter except in connection with criminal lifestyles.

Meanwhile, Chen has access to large sums of cash and ties to China, where she is a citizen.

If the Court disagrees with the government as to the risk of flight, the government respectfully requests that before Chen is released, a routine Prebail Report is made, so that the Court and parties can have more factual information about the defendant and assess whether any viable sureties exist and determine whether Chen has assets she can post.

DATED: December 17, 2024                                              Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


_____/s/_____
JOSEPH TARTAKOVSKY
Assistant United States Attorney

GOVT'S MEM. OF POINTS AND AUTHORITIES ISO PRETRIAL DETENTION                            4
24-mj-71766 MAG